UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| MARY BANCROFT, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 5:22-cv-1488-GMB |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

On November 5, 2020, Plaintiff Mary Bancroft filed an application for supplemental security income ("SSI") with an alleged disability onset date of June 1, 2013. Bancroft's application was denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a telephone hearing on June 27, 2022, and denied Bancroft's claims on August 2, 2022. Bancroft requested a review of the ALJ's decision by the Appeals Council, which declined review on October 19, 2022. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of October 19, 2022.

Bancroft's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States

Magistrate Judge. Doc. 11. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not

---

[1] In general, the legal standards are the same whether a claimant seeks disability insurance benefits ("DIB") or SSI. However, separate parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Bancroft bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

>  (1) Is the claimant presently unable to engage in substantial gainful activity?
>  (2) Are the claimant's impairments severe?
>  (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
>  (4) Is the claimant unable to perform her former occupation?
>  (5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III.  RELEVANT FACTUAL BACKGROUND

Bancroft was 41 years old on the date she filed her SSI application. R. 62 & 162. Her primary complaint is constant pain in the lower part of her back on the right side. R. 45. In her disability report, Bancroft alleged the following medical conditions: post-traumatic stress disorder ("PTSD"), anxiety, depression, degenerative joint disease, fibromyalgia, Graves' disease, sciatic nerve damage, and scoliosis. R. 199.

Bancroft has a ninth-grade education. R. 44. She lives in a single-family home with her husband, mother-in-law, and eight-year-old son. R. 43. She does not have any relevant past work experience. R. 57.

At the hearing, Bancroft testified about her limitations and daily activities. She stated that she is most comfortable while sitting so she spends four or five hours

sitting during a typical day. R. 46. The rest of the day she is walking or laying down. R. 46. Bancroft testified that she performs household chores like cooking, laundry, and cleaning, but she takes her time and asks her husband for help when needed. R. 47. She takes care of her personal hygiene and makes herself breakfast and coffee each morning. R. 48. She also watches television, does puzzles, and reads, although she takes breaks every half hour to hour. R. 48. Bancroft has a driver's license and drove on short errands in the past, but at the time of the hearing she did not have a car. R. 54. She gets tired easily and testified that "if [she] do[es] too much during the day, it makes [her] tired and [she] get[s] weak and . . . [has] to lay down and go to sleep for a little while." R. 49.

Dr. Moses Awoniyi, a family physician, completed a form for a Clinical Assessment of Pain on March 9, 2022. R. 703. The form prompted Dr. Awoniyi to circle one of four answers to three questions. R. 703. The first question asked, "To what extent is pain of significance in the treatment of this patient?" R. 703. Dr. Awoniyi circled the most restrictive choice: "Pain is present and found to be intractable and virtually incapacitating this individual." R. 703. The second question asked, "To what extent will physical activity, such as walking, standing, sitting, bending, stooping, moving of extremities, etc., increase the degree of pain experienced by this patient?" R. 703. Dr. Awoniyi circled the third most severe of the four choices: "Greatly increased pain and to such a degree as to cause distraction

from tasks or total abandonment of task." R. 703. The final question asked, "In your best judgment, to what extent will the side effects of prescribed medication impact upon this patient's ability to perform his/her work?" R. 703. Dr. Awoniyi chose the second most severe of the four answers: "Some limitations may be present but not to such a degree as to create serious problems in most instances." R. 703.

On the same day, Dr. Awoniyi completed a form for a Physical Capacities Evaluation. R. 704. This form also prompted Dr. Awoniyi to answer a series of questions by checking or circling pre-printed answers. R. 704. When asked the "most reasonable lifting and/or carrying expectation for this person during a normal workday," he answered that Bancroft would be limited to ten pounds occasionally and five pounds frequently. R. 704. Dr. Awoniyi circled "2 hours" when asked how long Bancroft could sit during an 8-hour workday and "1 hour" for how long she could walk or stand during that workday. R. 704. Dr. Awoniyi responded that Bancroft could rarely push or pull; occasionally climb stairs; rarely perform gross manipulation (grasping, twisting, and handling); frequently perform fine manipulation; rarely bend, stoop, or reach; occasionally operate a motor vehicle and be exposed to environmental problems like allergies and dust; but never work around hazardous material. R. 704. He also indicated that she would be absent from work for more than four days per month. R. 704. Finally, when asked to explain and briefly describe the degree and basis for any restriction checked above, Dr. Awoniyi

7

wrote only "Difficulty bending walking & lifting." R. 704.

The ALJ issued her decision on August 2, 2022. R. 32.  Under step one of the five-step evaluation process, she found that Bancroft had not engaged in substantial gainful activity since November 5, 2020, the application date. R. 23.  The ALJ concluded that Bancroft suffers from the severe impairments of lumbar degenerative disc disease, osteoarthritis of the bilateral hips, obesity, generalized anxiety disorder with panic attacks, major depressive disorder, and PTSD.[2] R. 23.  The ALJ noted that these medically determinable impairments cause significant limitations to her ability to perform basic work activities (R. 23) but concluded at step three of the analysis that none of Bancroft's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 24–25.

Before proceeding to the fourth step, the ALJ determined that Bancroft had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 416.967(b). R. 20.  More specifically, the ALJ found that Bancroft had the following limitations with respect to light work:

> [S]tanding and/or walking for a total of 6 hours in an 8-hour day; sit for about 6 hours in an 9-hour day; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; no overhead reaching bilaterally; understand, remember, and complete simple and detailed instructions and tasks for two hour segments of time with customary breaks between

---

[2] The ALJ found that Bancroft's other impairments of history of right knee osteoarthritis, thyroid disorder, and Graves' disease were non-severe. R. 24.  Bancroft does not challenge these findings. *See* Doc. 10.

segments; occasional contact with the public and coworkers; and could tolerate occasionally change in job duties.

R. 25–26. At the fourth step, the ALJ considered Bancroft's age, education, work experience, and RFC in determining that there are jobs that exist in significant numbers in the national economy that she can perform, including work as a marker, inspector, and grater sorter. R. 31–32. Therefore, the ALJ concluded that Bancroft was not under a disability as defined by the Social Security Act since November 5, 2020, the date she filed the application. R. 32. Based on these findings, the ALJ denied Bancroft's SSI application. R. 32.

## IV. DISCUSSION

Bancroft makes one argument in favor of remand: that "the ALJ's findings regarding the persuasiveness of Dr. Moses Awoniyi's opinion is not supported by substantial evidence." Doc. 10 at 3. The court disagrees.

As Bancroft recognizes, the Social Security Administration published final rules in 2017 titled "Revision to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844; *see also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Reg. 5844). Because these final rules were effective as of March 27, 2017, and Bancroft applied for benefits after that date, the new rules apply to her claim. Under 20 C.F.R. § 404.1520c(a), the ALJ need not give any specific evidentiary weight to medical opinions, including those from the claimant's own medical sources.

The ALJ may consider the following factors in reviewing a doctor's opinion: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Therefore, while the ALJ must explain how she considered supportability and consistency in her decision, she need not explain how she considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2). And the ALJ is not required to articulate how she evaluates each medical opinion or prior administrative medical finding; the application of each factor to all of the medical evidence is sufficient. 20 C.F.R. § 404.1520c(b)(1).

Bancroft points to Dr. Awoniyi's two forms (R. 704) and argues that the ALJ did not properly consider his opinions about her limitations. Doc. 10 at 9–14. The court disagrees. The ALJ rejected Dr. Awoniyi's opinions stated in the forms as "overly restrictive given the claimant's admitted daily activities" and found that "the objective record does not support the need to miss more than four days per month and can only stand and walk 1 hour per day." R. 28. Substantial evidence supports the ALJ's evaluation of Dr. Awoniyi's medical opinion. *See Thomason v. Soc. Sec. Admin., Comm'r*, 2021 WL 4061423, *7 (N.D. Ala. Sept. 7, 2021) (holding that "so long as the finding of the ALJ is supported by substantial evidence, it must be affirmed by this Court").

First, the medical records[3] do not support Dr. Awoniyi's extreme limitations. In January 2017, several years before her application date, an x-ray of Bancroft's lumbar spine revealed moderate to severe degenerative disc disease at L5-S1, but mild disease at the remaining levels. R. 278.  In March 2021, another x-ray showed that this disc disease remained stable and had not worsened. R. 713.  An x-ray of Bancroft's hips in March 2021 confirmed moderate osteoarthritis. R. 711–12.  As the ALJ noted, however, the treatment for these conditions was "extremely limited, routine and conservative in nature," including medication and continued monitoring. R. 27; *see* R. 292–95, 373–78, 379–84, 385–90, 580–82, 698–99 & 717–18.  The records do not mention surgery as a treatment option and Bancroft has not been prescribed steroid injection therapy or opioids.  And although the records show some tenderness in her spine, there has not been any evidence of muscle atrophy, cramps, or objective neurological defects. R. 292–95, 377–78, 384, 390, 396, 413, 421, 445–46, 459, 480–81, 501, 580, 698 & 717–18.  Simply put, the medical records, including the conservative treatment associated with Bancroft's medical impairments, do not support Dr. Awoniyi's extreme limitations. *See Pennington v. Comm'r of Soc. Sec.,* 652 F. App'x 862, 873 (11th Cir. 2016*)* (concluding the ALJ properly considered the claimant's conservative treatment with medication as

---

[3] As far as the court can tell, there are only two medical records directly from Dr. Awoniyi and they are partially illegible. R. 717–18.

evidence undermining his testimony); *Belle v. Barnhart*, 196 F. App'x 558, 560 (11th Cir. 2005) (noting that normal findings on examination support an ALJ's decision to discount subjective complaints); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.").

Second, despite her argument to the contrary, Bancroft testified that she engaged in normal, basic activities of daily living. Specifically, she said that she is the primary person responsible for the cooking, cleaning, and laundry in her household and that she is able to take care of her personal hygiene. R. 47–48. These activities undermine her claim of disabling limitations. *See Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019) (upholding ALJ's finding that subjective complaints were inconsistent with a record of simple daily activities).

Third, Dr. Awoniyi did not provide any substantive explanation for his opinions outside of a single notation, "Difficulty bending walking & lifting." R. 704. Instead, he checked boxes, circled responses, or filled in blanks without explaining his answers. Opinions of this type are conclusory and have limited probative value. Indeed, several courts have criticized "form reports" like these, where a physician merely checks off a list of symptoms without providing an explanation of the evidence that supports the decision. *See Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) (noting that the "form report completed by

Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding that the use of a "questionnaire" format typifies "brief or conclusory" testimony); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."). The lack of explanation, the lack of support in the medical documents, and inconsistency with Bancroft's reported daily activities undermine Dr. Awoniyi's opinions.

Finally, the court rejects Bancroft's invitation to reweigh the evidence. Instead, it is the court's job to review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record. *Foote*, 67 F.3d at 1558 (citing 42 U.S.C. § 405(g)). "If the Commissioner's decision is supported by substantial evidence, this [c]ourt must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The court "will not decide facts anew, make credibility determinations, or reweigh the evidence." *Porto v. Acting Comm'r of Soc. Sec.*, 851 F. App'x 142, 145 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th

Cir. 2011)).

For these reasons, the court concludes that the ALJ applied the proper standard in evaluating Bancroft's medical evidence and did not err in her consideration of Dr. Awoniyi's opinion. The ALJ adequately articulated the reasons for finding the opinion unpersuasive and inconsistent with the medical record. The court finds that substantial evidence supported this decision.

## V.  CONCLUSION

The court concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Therefore, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on October 24, 2023.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE